Submitted on briefs June 5, affirmed June 30, 1914.

## FILKINS *v.* PORTLAND LUMBER CO.*

(142 Pac. 578.)

**Appeal and Error—Pleading—Review—Discretion of Trial Court— Amendment of Pleadings.**

1. Under Section 102, L. O. L., authorizing the trial court to allow a pleading to be amended any time before trial, such allowance is within the court's discretion, which will not be reviewed, except for an abuse thereof.

**Continuance—Grounds—Surprise—Amendment of Pleading—Discretion of Trial Court.**

2. In an action for personal injuries, an amendment to the complaint after the jury had been elected, but before any testimony was given, so as to allege that the damages were $7,500 instead of $2,500, did not make such a change in the material averments of the original pleading that its allowance, without a continuance to secure necessary witnesses, would be error.

[As to amendment of pleading as ground for continuance, see note in Ann. Cas. 1914A, 1268.]

**Appeal and Error—Review—Harmless Error—Amendment of Pleading.**

3. Any error in allowing an amendment of the complaint to allege $7,500 damages instead of $2,500 did not prejudice the defendant, where the judgment did not exceed the sum originally demanded.

---

*The authorities on the question of the constitutionality, applicability, and effect of the Federal Employers' Liability Act are gathered in a note in 47 L. R. A. (N. S.) 38. REPORTER.

Trial—Reception of Evidence—Objections.

4. An objection to evidence as incompetent, irrelevant, and immaterial is insufficient to raise the point that the witness is not qualified to give opinion evidence.

Appeal and Error—Review—Discretion of Trial Court—Competency of Witnesses.

5. Where the answer alleged that plaintiff had been working for a long time for defendant, and knew the manner in which the "hog" in a sawmill was equipped and operated, and where employees were compelled to stand, and that he was experienced in that line of work, and the testimony shows that the "hog" was operated by steam power and fastened beneath the floor, from which edgings, etc., were thrust into the machine through a hopper about three feet above the floor, there is no such abuse of discretion in admitting plaintiff's testimony as to the manner in which the "hog" could have been guarded, so as to render it safe for employees, as to make the ruling ground for reversal.

[As to when opinions of nonexperts are admissible in evidence, see note in 30 Am. St. Rep. 38.]

Master and Servant—Injuries to Servant—Assumption of Risk—Statutory Provision.

6. Under Employers' Liability Act (Laws 1911, p. 16), Section 1, requiring all persons having charge of any work involving danger to employees to use every device practicable for the protection of life and limb, limited only by the necessity for preserving the efficiency of the structure or apparatus, and without regard to the additional cost, removes the defense of assumption of risk in cases within the act, and a charge that it is not the duty of the master to furnish the best or latest machinery nor to furnish absolutely safe machinery, and that he may conduct his business in a manner most agreeable to himself, using either old or new machinery, and an employee entering the service with knowledge of the circumstances cannot complain, is properly refused.

[As to assumption of risk by servant on failure of master to perform statutory duty, see note in Ann. Cas. 1913C, 210.]

Negligence—Contributory Negligence—Comparative Negligence.

7. Under Employers' Liability Act (Laws 1911, p. 18), Section 6, providing that contributory negligence of the person injured shall not be a defense but may be taken into account by the jury in fixing the damages, where the party injured was not exercising ordinary care, a part of the loss must be borne by him, and the remainder is recoverable from the defendant on the basis of the comparative fault of each; the doctrine of comparative negligence that the person injured is entitled to recover only when his negligence is slight and that of defendant gross in comparison not being applicable.

From Multnomah: HENRY E. McGINN, Judge.

Department 1.   Statement by MR. JUSTICE MOORE.

This is an action by John Filkins against the Portland Lumber Company, a corporation, to recover dam-

ages for a personal injury. The plaintiff, while employed by the defendant and engaged in placing in a machine in its sawmill, called a "hog," edgings and other waste material to be broken into suitable lengths for fuel, was hit in the eye by an escaping stick producing the injury complained of, which hurt is alleged to have been caused by the defendant's negligence in failing properly to guard such machine. The cause, being at issue, was tried, resulting in a verdict and judgment for the plaintiff in the sum of $2,500, and the defendant appeals.                      AFFIRMED.

For appellant there was a brief over the names of *Messrs. Wilbur & Spencer* and *Mr. F. C. Howell.*

For respondent there was a brief over the names of *Messrs. Malarkey, Seabrook & Dibble* and *Mr. George C. Johnson.*

MR. JUSTICE MOORE delivered the opinion of the court.

1–3. After the jury had been selected, but before any testimony was given, the plaintiff was permitted, over objection and exception, to amend his complaint so as to allege that the damages which he had sustained were $7,500 instead of $2,500, as originally averred, and it is maintained that an error was thereby committed. Any time before trial the court may allow a pleading to be amended: § 102, L. O. L. Such alteration is a matter within the court's discretion which will not be reviewed except for an abuse thereof: *Ridings* v. *Marion Co.,* 50 Or. 30 (91 Pac. 22); *Beard* v. *Royal Neighbors of America,* 60 Or. 41 (118 Pac. 171); *Domurat* v. *Oregon-Wash. R. & N. Co.,* 66 Or. 135 (134 Pac. 313). If, however, the proposed amendment will make such a change in the material aver-

ments of the original pleading that the opposing party, relying upon the primary statements of facts, would not be prepared for trial, the alteration ought not to be permitted, except on condition that sufficient time be given him to secure necessary witnesses to obtain whom a continuance should be granted: *Swift* v. *Mulkey*, 14 Or. 59 (12 Pac. 76). The amendment complained of does not come within the limitation supposed, for the alteration relates only to the degree of the injury measured by the resulting damages and not to the cause of the hurt. Under any view that may be taken of the court's action in this respect, the defendant was evidently not prejudiced thereby, since the judgment rendered against it did not exceed the sum originally demanded.

4. It is insisted that an error was committed in permitting the plaintiff, after stating upon oath that he had seen several other mills, in each of which a like instrumentality was used, and where means had been adapted to protect laborers from escaping sticks, to testify, over objection and exception, as to the manner in which the "hog" in the defendant's mill could have been guarded so as to render it safe for employees to work about the machine. It is argued that the evidence received did not show this witness was qualified to express an opinion on the subject. It is contended, by plaintiff's counsel, however, that the objection interposed to such testimony was based on the ground that it was incompetent, irrelevant, and immaterial only and did not call the court's attention to the present asserted incompetency of the witness. It has been ruled that such an objection was insufficient: *Aldrich* v. *Columbia Ry. Co.*, 39 Or. 263 (64 Pac. 455); *Robinson* v. *Marino*, 3 Wash. 434 (28 Pac. 752, 28 Am. St. Rep. 50).

5. Another reason may be assigned for upholding the action of the court as to this matter. The counsel for a party may render his client liable for solemn admissions made at the trial of his cause, and it is believed this was done in the case at bar. Thus the answer herein alleges in effect that the plaintiff, prior to his injury, had been working for a long time for the defendant and knew the manner in which the "hog" was equipped and operated, and where employees were compelled to stand, and that he was experienced in the line of work in which he was engaged. The testimony shows that the "hog" was operated by steam power and fastened beneath the floor, from which edgings, etc., were thrust into the machine through a hopper about three feet above the floor, on which the plaintiff stood when performing the services. The admission in the answer and the testimony adverted to afford some evidence of the plaintiff's qualifications to express an opinion as to the manner in which the machine could have been guarded, and, since the degree of proof in such cases is a matter of discretion, it will not be reviewed, except in cases of an abuse thereof, which is not apparent herein: *State* v. *Cole,* 63 Iowa, 695 (17 N. W. 183).

6. The plaintiff further testified that the chute could have been rendered safe by using at the top a trap-door that might have been opened to permit the entry of edgings, etc., by pushing them against the covering, which could have been so arranged as to have closed automatically. The defendant called several expert witnesses, who testified that the manner of guarding the chute as thus suggested was impracticable. Based on this conflicting testimony, the defendant's counsel, in support of their theory, requested the court to charge the jury as follows:

"As a matter of law, I instruct you that it is not the duty of the master to furnish the best or the latest tools or machinery for the use of his servant, nor is the master required to furnish absolutely safe machinery for the servant to work with. The master may conduct his business in a manner most agreeable to himself, using either old or new machinery, and an employee, who enters his service with knowledge of the circumstances surrounding and attending the employment cannot complain of his master's customs or habits, nor recover for injuries sustained in and resulting from that particular service."

The court refused to give this instruction, whereupon an exception was taken, and it is contended that an error was thereby committed.

The Employers' Liability Act requires that all "persons having charge of, or responsible for any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices": Laws Or. 1911, c. 3, § 1.

Under the rule formerly prevailing in this state, as well as in other jurisdictions, it was held that a servant, when entering upon a discharge of the duties of his employment, assumed all the dangers that might result from ordinarily open and visible risks in the use and operation of the instrumentalities connected with the branch of the work in which he was engaged: *Stone* v. *Oregon City Mfg. Co.,* 4 Or. 52; *Viohl* v. *North Pac. Lumber Co.,* 46 Or. 297 (80 Pac. 112); *Blust* v. *Pacific Telephone Co.,* 48 Or. 34 (84 Pac. 847). The legal principle thus recognized was altered by the en-

actment of the statute, an excerpt from which is here-inbefore set forth: *Hagermann* v. *Chapman Timber Co.*, 65 Or. 588 (133 Pac. 342). The protection of life and limb of an employee is now recognized as a right which a state, in the reasonable exercise of its police power, may legally enforce, and where a statute, like the Employers' Liability Act of Oregon, imposes upon an employer the duty to furnish a reasonably safe place in which to perform the service and to supply reasonably safe tools, machinery, etc., with which to do the work, and prescribes a penalty, upon a conviction, for a violation thereof, the right of the public is superior to that of the individual, and an employee will not be permitted to excuse the employer's obedience to the requirements of the enactment, or allowed to contract to assume the risk of noncompliance therewith, and the maxim, *"Volenti non fit injuria"* has no application: *Davis Coal Co.* v. *Polland,* 158 Ind. 607 (62 N. E. 492, 92 Am. St. Rep. 319); *Monteith* v. *Kokomo Wood Enameling Co.,* 159 Ind. 149 (64 N. E. 610, 58 L. R. A. 944).

This action is founded upon an alleged breach of the provisions of the enactment referred to, and as a part of the instruction requested was evidently predicated upon the doctrine of assumption of risk, which legal principle previously obtained, the court did not err in refusing to give it: *Dorn* v. *Clarke-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351).

7. It is argued that an error was committed in giving the following instruction, to which an exception was taken, to wit:

"If you should find in this case that there was negligence upon the part of the defendant company, and if you find that there was negligence upon the part of the plaintiff, and that the negligence of both concurred

and combined and came together to produce the injury to the plaintiff, the law does not prevent the plaintiff from recovering; but you are in that event to compare their negligence and say: 'How much ought the defendant to pay for its negligence, and how much ought the plaintiff to pay for his negligence?' If you determine that the defendant ought to pay more for its negligence, then the difference between what you determine the defendant ought to pay for its proportionate measure of negligence and what you determine the plaintiff ought to pay for his negligence is the amount for which the plaintiff would be entitled to recover. It is the doctrine of comparative negligence that applies in such an instance. You compare the negligence under the law as it is now, and you do not, by reason of contributory negligence upon the part of the plaintiff, prevent recovery upon his part, if he is at all entitled to recovery."

The part of the charge thus complained of is founded upon another clause of the statute referred to, which reads:

"The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage": Laws Or. 1911, c. 3, § 6.

If, in the part of the instruction last quoted, the court by the use of the sentence, "It is the doctrine of comparative negligence that applies in such an instance," meant that the Illinois rule on the subject of negligence was to govern the jury in determining the issue, it is believed that the legal principle so announced, when not considered in connection with the other portions of the charge, is too narrow in its application. While this part of the instruction may not have injured the plaintiff, the rule of the state referred to might be prejudicial to a party injured by the negligence of his employer, though the person hurt might

also have been guilty of some degree of negligence.    A text-writer, discussing the subject, says:

"The doctrine of comparative negligence, as it formerly obtained in Illinois, was not left in a state of confusion and uncertainty. * * On the contrary, it is reduced to a definite formula which may be stated thus: If, on comparing the negligence of the plaintiff with that of the defendant, or the negligence of the person injured with that of the person inflicting the injury, the former is found to have been slight in comparison with the latter, and the latter gross in comparison with the former, the plaintiff may recover, provided always that the negligence of the plaintiff was slight in point of fact; that is, he was in the exercise of ordinary care, although possibly not of extraordinary care": 1 Thomp. Com. Law of Neg., § 269.

This rule appears formerly to have prevailed in this court, which held that a plaintiff's slight negligence, contributing to his injury, but not amounting to a want of ordinary care, would not excuse a defendant's gross negligence: *Bequette* v. *People's Transportation Co.,* 2 Or. 200; *Holstine* v. *Oregon & C. R. R. Co.,* 8 Or. 163. In a subsequent case it was suggested, however, that the doctrine of comparative negligence should be rejected as unsound in principle: *Hamerlynck* v. *Banfield,* 36 Or. 436, 441 (59 Pac. 189). Whatever standard may have obtained in this state with respect to the determination of the right of the employee to damages resulting from the negligence of the employer, a new rule was inaugurated by the Employers' Liability Act.

Construing Section 6 in connection with the other provisions thereof leads to the conclusion that the enactment makes an injury suffered by an employee, when performing the service for which he was engaged, a loss the damages resulting from which, if sustained

71 Or.—17

while the person so hurt was exercising ordinary care, must be wholly liquidated by the employer; but, if the party injured was not at the time he was hurt exercising that measure of care, a part of such loss must be borne by him, while the remainder of the damages is recoverable from the other party, on the basis of the comparative degree of the fault of each. The defense of contributory negligence being unavailing in the class of cases provided for in the Employers' Liability Act, that statute prescribes the same rule of apportioning damages that obtains in courts of admiralty in cases of marine tort founded upon negligence: 1 Thomp. Com. Law Neg., § 286.

Omitting from instruction last complained of the sentence, "It is the doctrine of comparative negligence that applies in such an instance," which language, if it means the Illinois rule that once obtained, is more liberal to the defendant than it had a right to insist upon, the remaining part of the charge last quoted clearly announces the rule applicable to cases of this kind under the statute in question.

It will be observed, however, that the question submitted to the jury was, How much ought the plaintiff to "pay" for his negligence? when the court evidently meant, What part of the loss should be borne by him in consequence of his negligence, if the jury found that he had not exercised ordinary care?

The use of the word "pay" did not mislead the jury, and, no error having been committed as alleged, the judgment is affirmed.        AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.