# CHARLESTON.

W. F. PATTERSON, JR., ADM'R., ETC. *v.* NEW RIVER & POCA-
HONTAS CONSOLIDATED COAL COMPANY.

Submitted October 5, 1920.    Decided October 12, 1920.

1. BAILMENT—*Defendant Was Not Liable for Use of Machinery to Owner Who Had Leased it to One Using it in Work for Defendant.*

One who enters into a contract with another for the doing of certain work cannot be held liable in an action at law by the owner thereof for the rental value of machinery used by such other in the doing of such work, even though it appears that he had knowledge that such machinery belonged to a third party who had leased it to the contractor for the doing of the particular work.    (p. 178).

2. SAME—*Defendant Held Not Liable for Use of Machinery to Owner Who Had Leased it to One Using it in Work for Defendant.*

Where the owner of machinery leases it to a contractor for the purpose of being used in the execution of certan work which such contractor has undertaken to perform, he cannot hold the party for whom the work is being done liable for the use of such machinery, upon the ground that payments were made to the contractor for such work in advance of the time provided in the contract.    (p. 178).

3. SAME—*One Knowingly Using Another's Property is Liable for Reasonable Value of Use.*

One who, without the consent of the owner, knowingly uses for his own benefit the property of another, will be liable in an action of assumpst to such other for the reasonable value of the use so made of such property.    (p. 183).

4. EVIDENCE—*Testimony in Former Trial by Witness Since Deceased Admissible in Subsequent Trial of Same Case.*

The evidence of a witness on a former trial of a civil case, who has since died, may be proved on a subsequent trial of the same case.    (p. 182).

(WILLIAMS, PRESIDENT, absent.)

Error to Circuit Court, McDowell County.

Action of assumpsit by W. F. Patterson, Jr., administrator, etc., against the New River & Pocahontas Consolidated Coal Company. Verdict and judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*Anderson, Strother, Hughes & Curd,* for plaintiff in error.
*Sale & Tucker,* for defendant in error.

RITZ, JUDGE:

This action of assumpsit was instituted for the purpose of recovering for the use of certain machinery belonging to the plaintiff's decedent, which it is contended was used in the defendant's business by a contractor which it had employed to do certain work for it. A trial in the circuit court of McDowell county resulted in a verdict and judgment in favor of the plaintiff, to review which this writ of error is prosecuted.

It appears that on the 30th of July, 1912, the defendant entered into a contract with one W. H. Hyde by which the said Hyde agreed to sink and construct two shafts, including concrete lining, as well as certain other work in connection therewith, at Weirwood, in Fayette county, for certain prices therein named, the said Hyde to furnish all labor, material, tools and equipment for the doing of said work. The specifications, which were made a part of the contract, provided that the work to be done included all concrete masonry around the top of the shafts, all excavating timbering, concrete lining, placing of guides, water rings, building stairway, and such other work as may be directly or indirectly connected with the sinking of the said shafts. It is further provided that the plans and specifications are intended to co-operate and to be taken together, so that any work shown on the plans and not mentioned in the specifications, or vice versa, shall be executed the same as though set forth on the plans or mentioned in the specifications, that is to say, the contractor undertook to do all of the work mentioned either in the specifications or shown on the plans, and not only such work as was shown by both. The contract provided certain prices for the work to be done, including the price of five dollars per cubic yard for entry

driving.   This item is mentioned for the reason that it covers
the character of work involved here.   The contract further
provided that the contractor should complete the work within
six months, and the same should be paid for upon monthly
estimates, ninety per cent. to be paid to the contractor as the
work progressed, and ten per cent. of such estimates to be
retained until the work was completed.   The contractor entered
upon the work in the year 1912, and completed the same in
the fall of 1914, consuming two years in the performance of the
contract, instead of six months, as provided therein.   No ad-
vantage, however, was taken of this by the defendant.   Upon the
completion of the work a final estimate was made and settle-
ment had with the contractor.   In March, 1913, while the work
was in progress, the contractor wrote a letter to the defendant
informing it that certain of the machinery, a list thereof being
attached to the letter, which he was using in the performance
of said work, belonged to plaintiff's decedent; that the con-
tractor had the use of the same as long as he was using it in
the work at Weirwood.   This was the only notice the defend-
ant ever had that plaintiff's decedent had any interest in the
machinery or equipment being used by the contractor.   The
plaintiff contends that about this time, to-wit, in March, 1913,
the defendant and the said Hyde changed the arrangement un-
der which said work was being done, and that thereafter the
defendant paid the contractor Hyde the full amount of his
pay rolls and other bills while doing the work, regardless of
whether the estimates for any particular month amounted to
as much as the contractor's expenses or not, and that because
of this arrangement the contractor became simply an employe
of the defendant here.   Plaintiff, therefore, claims that for
the use of the machinery after that time the defendant is liable.
He further says that, if the above contention is not tenable,
this machinery was used in the performance of work in addi-
tion to the work provided to be done by the contract, and that
for the use of the same in doing such work for the defendant
he is entitled to the reasonable value thereof.   There is also
a claim made for certain items of personal property which it
is claimed were appropriated by the defendant.   All of these

were waived, however, except one item which will be hereafter mentioned. The court below found that plaintiff's first contention, to the effect that the contract had been virtually abandoned, and the contractor become simply an employe of the defendant, was not sustained by the proof, but allowed a recovery on the verdict of the jury for the use of the machinery in doing the work, which the jury found was outside of the contract, amounting to more than seven thousand dollars. This action of the court is assigned as error by the defendant, and the plaintiff assigns as cross error the action of the court in refusing to allow him to recover on the basis of his contention first stated above. The contention of the defendant is that the contract between it and Hyde included all of the work done by Hyde, and that whatever the law may be as to the right of the plaintiff to recover for the use of the machinery, in case it had been unauthorizedly used by Hyde, he has no basis for recovery under the showing made here. The basis for the plaintiff's claim on this account is that in addition to doing the work referred to in the contract Hyde excavated for the defendant a space for a pump house at the base of the shafts, and also drove some lateral entries from the shafts, with a view to the mine development, which plaintiff claims was not within the terms of the contract. As before stated, this work was completed in the fall of 1914, and neither the plaintiff nor his decedent made any claim against the defendant for the use of this machinery until the bringing of this suit four years later, after the death of Hyde, to whom the machinery had been hired. It appears that plaintiff's decedent was to receive from Hyde for the use of the machinery forty-five per cent. of the profits Hyde made on the work. Presumptively he has received this amount, although he does not say in his evidence whether he has or not. As before stated, the contract provides that the plans and the specifications are to be taken together, and any work shown either by the specifications or upon the plans is to be done as if the same were shown by both documents. The specifications say nothing about excavating for the pump house, nor do they make any provision for entry driving, except that it is significant that a price of five dollars

per cubic yard is provided in the specifications for such work, but the plans, which are introduced in evidence, show the pump house, and show the entries, and the defendant insists that Hyde was as much under obligation to do this work when shown only by the plans as if it had been shown both by the specifications and the plans. For all of the work that Hyde did he was paid in accordance with the terms of the contract. For driving these entries, which the plaintiff claims was not within the provisions of the contract, he was paid at the rate provided in the contract. The parties to this contract construed it themselves, and fixed their obligations to each other under it, and it might be well said that even though the same were ambiguous third parties have no right to place upon it a different construction from that given to it by the parties who made it. But the contract is not ambiguous. Clearly all of the work done by Hyde is provided for by the terms of the contract. While it is not mentioned in the specifications, this entry work is shown upon the plans, and by the terms of the contract Hyde was under the same obligation to perform it as he would have been had it been shown both by the plans and specifications. It is argued that Hyde did not excavate all of the entries shown on the plans. This could not form the basis of the claim by the plaintiff here. It was none of his business if the defendant excused Hyde from the performance of some work which it could have required of him. This was a matter between Hyde and the defendant.

Evidence was permitted to be introduced to the jury showing that in the opinion of certain witnesses this entry driving was not included within the terms of Hyde's contract, and by other witnesses that it was included therein, and the question submitted to the jury, and their finding made the basis of the recovery permitted the plaintiff in this case. This was error. It was the duty of the court to declare the terms of this contract, plain and unequivocal on its face, and not to permit a jury to place upon it an interpretation which finds no warrant in the language used by the parties. Further than this, Hyde and the defendant construed it themselves, and the construction placed upon it by them is binding.

The plaintiff contends that in March, 1913, the defendant and Hyde changed the method of doing this work, and in support of this a son of plaintiff's decedent, who worked for Hyde, testified that after that time the company paid all of Hyde's pay roll expenses, regardless of whether they amounted to more than his estimates or not. This appears to be true to a certain extent. It is clear, however, that all of the work was done under the contract, and was estimated and paid for at the price provided for in the contract. However, the defendant did not at all times retain the ten per cent. which it might have retained until the completion of the work. It appears that when the final estimate was made it only owed Hyde a few hundred dollars, whereas if it had retained the full ten per cent. of the estimates, as it had a right to do under the contract, it would have owed him eighteen or twenty thousand dollars, inasmuch as the total amount paid Hyde for the work was nearly two hundred thousand dollars. This deviation from the terms of payment is not a matter that in any wise concerns the plaintiff here. It is not contended for a moment that Hyde did not get the full contract price for this work, and if he did the plaintiff's forty-five per cent. of the profits would be in no wise affected by the fact that part of it was paid to Hyde by the defendant before it was due.

The defendant assigns as error the action of the court in permitting the testimony of plaintiff's decedent given on a former trial of the case to be read as evidence upon the last trial, he having died in the meantime. It appears that this case had been tried prior to the trial in which the jury rendered the verdict upon which the judgment complained of was entered, and that the plaintiff's decedent was at that time alive and testified, his testimony being taken down by a stenographer and transcribed into longhand. The verdict of the jury rendered upon that trial was set aside, and when the case came up for a second trial plaintiff's decedent was dead, and over the objection of the defendant the plaintiff was permitted to introduce the evidence given by him upon the former trial. This court held in the case of *Carrico* v. *Ry. Co.*, 39 W. Va. 86, that the evidence of a witness given on a former trial of a civil case,

who has since died, may be proven on a subsequent trial of the case. There was, therefore, no error in this ruling of the court.

It is also contended by the defendant that this action of assumpsit cannot be maintained to recover the value of the use of the plaintiff's machinery under the circumstances shown here. We are of opinion that neither this action of assumpsit nor any other action could be properly entertained under the facts proven in this case, but if the plaintiff had proved a case of conversion by the defendant of the machinery he could, no doubt, maintain the action of assumpsit to recover the value of the use of the machinery during the time the defendant used it. If the defendant, with knowledge that this machinery belonged to plaintiff's decedent, took it and used it in its business, it would be liable to the same extent at least as if it had procured it from the owner for the purpose. 3 R. C. L., title "Bailments" § 65; *Palmer* v. *Mayo,* 80 Conn. 353, 68 Atl. 369 15 L. R. A. (N. S.) 428. And by the great weight of authority, the owner of such property may waive the tortious use thereof and sue in assumpsit upon the implied promise to pay the reasonable value of such use. *Woodruff* v. *Zaban,* 133 Ga. 24, 17 Am. & Eng. Ann. Cases, 974 and note; *Weaver* v. *Norway Tack Co.,* 80 Fed. 700; *Reed* v. *Weule,* 176 Fed. 660.

A claim is also made by the plaintiff for the value of a muck bucket which he claims the defendant is liable for. It is shown in the evidence that during the progress of this work the defendant, in order to assist Hyde, furnished him free of charge considerable machinery, among which were several buckets of the kind referred to; that when the work was completed Hyde and a representative of the defendant separated the machinery and appliances furnished by the defendant company from those furnished by Hyde and the plaintiff, and that only the material and appliances actually furnished by the defendant were received by it. The plaintiff claims that his decedent lost a muck bucket while this machinery was in use at that place. This may be entirely true, but he shows in the evidence no reason for charging the defendant with such loss. There is no showing that this muck bucket ever came into the possession of the defendant. If Hyde failed to return to him all of the machinery

which he delivered to Hyde, his action is against Hyde and not against this defendant, unless he shows that the defendant actually received it and converted it to its own use.

Another claim is for the expense of disconnecting and removing a boiler belonging to the plaintiff's decedent, which defendant had connected up with some of its machinery and used for a few minutes. It appears while this machinery was stored upon the defendant's property for some three years before it was removed, the defendant connected up one of the boilers and used it for a few minutes in an emergency, and that when plaintiff's decedent came to load his machinery he found it necessary to disconnect this boiler before it could be loaded. The cost of disconnecting the same, it is shown, would be less than a dollar, and he charges in addition to the cost of disconnecting the same the cost of removing it from the point where it had been used temporarily to the place where it was to be loaded. There does not appear to be any justification for such a charge as this. The defendant did not undertake to keep the property stored upon its land at any particular place, and it would have the right to move it from place to place to suit its convenience.

We are of opinion that the evidence utterly fails to establish any basis for a recovery, and that the court should have given the peremptory instruction prayed for. For this error we will reverse the judgment, set aside the verdict of the jury, and remand the cause for a new trial.

*Reversed and remanded.*